155 U.S. 156
 15 S.Ct. 42
 39 L.Ed. 106
 PITTSBURGH, C. & ST. L. RY. CO. et al.
v.
KEOKUK & H. BRIDGE CO.
 No. 633.
 November 19, 1894.
 
 This was a bill in equity, filed in the circuit court of the United States for the Northern district of Illinois by the Keokuk & Hamilton Bridge Company (hereinafter called the 'Bridge Company') against the Pittsburgh, Cincinnati & St. Louis Railway Company (hereinafter called the 'Pittsburgh Company') and the Pennsylvania Railroad Company, to recover deficiencies in tolls for the use of the plaintiff's bridge since March 1, 1883 under a contract, dated January 19, 1869, and modified June 6, 1871, by the Bridge Company with the Columbus, Chicago & Indiana Central Railway Company (hereinafter called the Indiana Central Company) and three other railroad corporations, by which the Briedge Company agreed to build and maintain a railway bridge across the Mississippi river, and granted to these four railroad companies in perpetuity the right to use it for the passage of their trains; and they agreed to pay monthly certain tolls, and, if those should fall below a certain sum, each to pay one-fourth of the deficiency.
 This contract was executed by the Indiana Central Company upon the requests in writing of the presidents of the Pittsburgh Company and of the Pennsylvania Company, by which these two companies agreed to 'assume all the liabilities and obligations, and be entitled to all the benefits, of said bridge contract, the same as if it had been specifically named and made a part of the ninth article of' a lease of the Indiana Central Company to and with the Pittsburgh Company and the Pennsylvania Company, dated January 22, 1869.
 By that lease, the Indiana Central Company leased it railroad to the Pittsburgh Company for 99 years; the Pittsburgh Company covenanted to pay a certain proportion of the earnings of that road to the Indiana Central Company, and, by the ninth article, to assume and carry out, receiving and enjoying the benefits thereof, certain existing concracts for transportation over railroads of other companies not mentioned above; and the Pennsylvania Company guarantied the performance of the covenants of the Pittsburgh Company.
 The bridge aforesaid, with the railroads of the Pennsylvania Company, the Pittsburgh Company, the Indiana Central Company, and other railroad companies named in the bridge contract, formed a continuous line of railroad transportation from Philadelphia to Des Moines.
 The privisions of the bridge contract and of the lease, and the circumstances attending and following their execution, are more fully set forth in the case between the same parties in 131 U. S. 371, 9 Sup. Ct. 770; but the above abstract is sufficient for the purposes of the present case.
 In June, 1871, immediately after the modification of the bridge contract, the bridge was accepted by the Bridge Company and was opened for use, and thenceforward was used by the Pittsburgh and Pennsylvania Companies in the exercise of the control asserted by them under the contract and lease aforesaid. The Bridge Company demanded payment directly from the Pittsburgh Company, semiannually, of the sums payable by the Indiana Central Company for tolls and deficiencies under the modified bridge contract; and from June, 1871, to September, 1874, the Pittsburgh Company paid to the Bridge Company the amount both of such tolls and of such deficiencies. After that time, like payments were demanded by the Bridge Company of the Pittsburgh Company, and the tolls, only, paid.
 On July 25, 1881, the Bridge Company filed a bill in equity against the Pittsburgh Company and the Pennsylvania Company to recover deficiencies in tolls for the use of the bridge from September 1, 1874.
 To that bill the defendants answered that the Indiana Central Company, the Pittsburgh Company, and the Pennsylvania Company never authorized their officers to execute the bridge contract, or to bind them by it, and that the contract was beyond the scope of their corporate powers.
 The Pittsburgh Company also, by way of supplemental answer, set up that in 1875 the trustees named in a mortgage made by the Indiana Central Company of its railroad, rights, and franchises, before the execution of the bridge contract, brought a bill in equity to foreclose that mortgage, and were thereupon appointed receivers, and, pursuant to decrees of foreclosure, there were conveyed by the Indiana Central Company to the receivers, and by them on January 10, 1883, sold and conveyed to three individuals, as trustees, for a smaller sum then the debt secured by the mortgage, its road, rights, and franchises, with the right to affirm or disaffirm the lease aforesaid, and the purchasers, on February 21, 1883, notified the Pittsburgh Company that they disaffirmed the lease; and further averred 'that, in accordance with said decrees, possession of said railway property, rights, and franchises has been surrendered to the said purchasers, and that it has been wholly ousted and evicted from all and singular the premises, rights, and franchises leased to it as aforesaid, and it relies upon the cancellation of said lease and the ouster and eviction, as aforesaid, as a full and perfect answer to the relief sought in the bill.'
 To those answers a general replication was filed, and the case was referred to a master, who reported that there was due from the Pittsburgh and Pennsylvania Companies to the Bridge Company, as one-fourth part of the deficiency in the receipts of the Bridge Company from September 1, 1874, to March 1, 1883, the sum of $118,076.89; and that the road, rights, and franchises of the Indiana Central Company had been sold and conveyed, as alleged in the supplemental answer of the Pittsburgh Company, to trustees, and by them on March 17, 1883, to the Chicago, St. Louis & Pittsburgh Railroad Company. The circuit court confirmed the master's report, and entered a decree for the Bridge Company for the sum found due; and, on appeals by the Pittsburgh Company and the Pennsylvania Company, that decree was affirmed by this court. 131 U. S. 371, 9 Sup. Ct. 770.
 The present bill was filed September 12, 1889, and set forth the proceedings and decree in the former suit. In an amended answer to this bill, the Pittsburgh Company and the Pennsylvania Company set up that the interlocutory decrees in the suit for foreclosure, appointing the receivers and directing a conveyance to them, were subject to the qualification that until further order of the court the receivers should not disturb the possession of the Pittsburgh Company; and that no order was made that they should disturb its possession, until and unless by the decrees of sale; but that, on the contrary, the Pittsburgh Company remained in undisturbed possession of the railroad property of the Indiana Central Company until March 17, 1883, when it was wholly dispossessed of the same and evicted therefrom, and from all rights under the lease, by the Chicago, St. Louis & Pittsburgh Railroad Company, to which the same had been conveyed by the purchasers under the decree of foreclosure, 'by virtue of which eviction the said Pittsburgh Company and the Pennsylvania Company lost and ceased to have any right, title, or interest to, or any claim or demand upon, said railway premises, property, and franchises, in or under said lease or amended lease, and became relieved thereby from all obligations, duties, and liabilities imposed by the ninth clause of said lease, and by the said requests, or either of them, and by the said original bridge contract, or any amendment or modification thereof.' To this answer the plaintiff filed a general replication.
 The circuit court entered a decree for the plaintiff, and the defendants appealed to the circuit court of appeals for the Seventh circuit, which certified to this court, under the act of March 3, 1891, c. 517, § 6, that at the hearing 'there arose upon the pleadings in the cause certain propositions of law, concerning which the instruction of the supreme court of the United States is desired. And because this court is in doubt whether, in view of the decision of the supreme court of the United States in the cause between the parties hereto, referred to in the pleadings, and reported in 131 U. S. 371, 9 Sup. Ct. 770, it is at liberty to consider or sustain the eviction pleaded in this case as a valid defense to the claim of the appellee, and whether the contracts with the Bridge Company could be avoided by any transaction with respect to the lease, it is therefore ordered that the pleadings in this case, to wit, the bill, the amended answer, and the replication, be certified to the supreme court of the United States for its opinion and instruction upon the following questions:
 '(1) Is this court at liberty, in view of the decision and decree in the former case between these parties, referred to in the pleadings, to consider or sustain the defense of eviction pleaded in this case?
 '(2) Are the contracts between the Bridge Company and the appellants so independent of the lease that they would not be affected, nor the defendant railway companies released from liability thereunder, by termination of the lease by eviction or otherwise?'
 George Hoadly, for Pittsburgh, C. & St. L. Ry. Co., and others.
 Edwin Walker, Lyman Trumbull, and Perry Trumbull, for Keokuk & H. Bridge Co.
 Mr. Justice GRAY, after stating the case, delivered the opinion of the court.
 
 
 1
 In the former case between these parties, reported 131 U. S. 371, 9 Sup. Ct. 770, it was decided that the Pittsburgh and Pennsylvania Companies were the real, though not the formal, parties to the bridge contract executed by the Indiana Central Company at their request and for their benefit; that this contract was within the scope of their corporate powers, and made them directly liable to the Bridge Company for the proportion of tolls and deficiencies which by the terms of that contract were chargeable to the Indiana Central Company; that the bridge contract was a separate and distinct agreement from the lease (to which the Bridge Company was not a party) between the Indiana Central Company and the Pittsburgh and Pennsylvania Companies; and that the validity and effect of the bridge contract did not depend upon the validity or invalidity of the lease, or upon the question whether these two companies, by reason of eviction, were no longer liable upon the lease.
 
 
 2
 In that case, this court, after discussing the terms of the lease, of the bridge contract, and of the agreement contained in the request of the Pittsburgh and Pennsylvania Companies to the Indiana Central Company to execute that contract, said:
 
 
 3
 'The reference in that request and agreement to the ninth article of the lease was for the purpose of defining the extent of the liabilities and benefits assumed, and perhaps of indicating that the Pittsburgh Company alone was bound as principal, and the Pennsylvania Company as guarantor only; but it did not make the bridge contract a part of the lease.'
 
 
 4
 'The sole ground of our decision is that the bridge contract is independent of the lease, and is valid and binding as between the parties to this suit, whether the lease is valid or invalid. This being so, the question argued at the bar, whether the appellants, by reason of eviction, are no longer liable on the lease, becomes immaterial.' 131 U. S. 387, 390, 9 Sup. Ct. 770.
 
 
 5
 The reason and principle of that decision, so far as concerns the present inquiry, were that, while the ninth article of the lease might be referred to for the purpose of defining the extent, or measure, and perhaps the nature or character, of the liabilities and benefits which the Pittsburgh and Pennsylvania Companies assumed by reason of the terms of the bridge contract, and of the agreement contained in their request for its execution, yet the bridge contract was not made part of the lease, nor was the whole lease made part of the bridge contract, or of the agreement expressed in the request, nor did the liability of the Pittsburgh and Pennsylvania Companies to the Bridge Company upon the bridge contract, for deficiencies in tolls upon the bridge, depend upon the question whether the lease of the road of the Indiana Central Company to the Pittsburgh Company was valid or invalid, or upon the question whether that lease remained in full force between the parties to it, or had been terminated by eviction of the lessee or otherwise.
 
 
 6
 The same reason and principle are no less applicable to the eviction as now pleaded than to the eviction as pleaded in the former suit.
 
 
 7
 Consequently, the second question certified by the circuit court of appeals must be answered in the affirmative; and no further solution of the doubts expressed by that court in the first question, and in the preamble thereof, is necessary to the disposition of the case.
 
 
 8
 Ordered accordingly.
 
 
 9
 Mr. Chief Justice FULLER, having been of counsel, did not sit in this case, or take any part in its decision.